**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

      GRUBB & ELLIS COMPANY, *et al.*,

Case No. 12-10685 (MG)

Jointly Administered

                    Debtors.

**MEMORANDUM OPINION AND ORDER DENYING FORMER AGENTS' MOTION**
**FOR ADMINISTRATIVE EXPENSES CLAIMS**

*A P P E A R A N C E S:*

DRINKER BIDDLE & REATH LLP
*Counsel for the Former Agents*
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
By:   Allen V. Farber, Esq.
       Kristin K. Going, Esq.

TOGUT, SEGAL & SEGAL LLP
*Counsel for the Debtors and Debtors-in-Possession*
One Penn Plaza
Suite 3335
New York, New York 10119
By:   Frank A. Oswald, Esq.
       Jonathan P. Ibsen, Esq.
       Melissa Iachan, Esq.

ALSTON & BIRD LLP
*Counsel for the Official Committee of Unsecured Creditors*
90 Park Avenue
New York, New York 10016
By:   Martin G. Bunin, Esq.
       John W. Spears, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

      Pending before the Court is the *Motion of Former Agents for Allowance and Payment of*

*Administrative Expense Claims* (the "Motion," ECF Doc. # 1167). Both the Debtor ("Debtor" or

"Grubb & Ellis") and the Official Committee of Unsecured Creditors (the "Creditors

Committee") filed objections (ECF Doc. ## 1608 and 1655, respectively).  The Former Agents

(defined below) filed a reply brief (ECF Doc. # 1675), and the Court heard argument on

September 25, 2012.  For the reasons explained below, the Court **DENIES** the Former Agents'

Motion.

## I.      BACKGROUND

On February 20, 2012 (the "Petition Date"), Grubb & Ellis and its affiliates filed

voluntary chapter 11 petitions.

The Former Agents are eight real estate agents who previously worked for Grubb & Ellis

either as employees or independent contractors—Charles Dilks, Andrew Klaff, Keith Lavey,

Kurt Stout, Peter Rosan, Kevin McGloon, Bruce McNair, and Steve Morgan.  All of the Former

Agents except Steve Morgan terminated their employment with Grubb & Ellis before the

Petition Date.  Steve Morgan terminated his employment after the Petition Date.

Moreover, all of the Former Agents, except Steve Morgan and Bruce McNair, entered

into a so-called "Termination Agreement" with Grubb & Ellis.  Bruce McNair terminated his

employment on February 13, 2012 pursuant to an "adequate justification" clause in an August

31, 2011 letter agreement with Grubb & Ellis.  Steve Morgan does not appear to have had any

written employment agreement with Grubb & Ellis.

A typical Termination Agreement between one of the Former Agents and Grubb & Ellis

provides:

> Compensation and Benefits During Employment.
> (i) Compensation . . . . When commissions have been paid to
> [Grubb & Ellis] from the part[ies] for whom services are
> performed, a portion will thereafter be paid to you within
> reasonable time following the Company's receipt of such
> commissions. . . . In no event will the Company or any other
> member of the G&E Family be liable to you for commissions not
> collected, and the Company is entitled to waive or settle any

2

> commission claims, and otherwise decide whether or not to pursue
> collection of a commission. . . . You are not entitled to receive
> advances against commissions to be paid to you in the future,
> unless the Company agrees in writing to provide advances.

*See* Former Agents' Motion Ex. B.  The Termination Agreement also stated that a former agent

may only be paid for

> transactions closed before the Termination Date . . . and for work
> which meets the definition of "Transaction" [which is] (a) a bona
> fide written offer to purchase or exchange which has been accepted
> in writing, with or without contingencies, prior to the Termination
> Date, or (b) a letter of intent or offer to lease, sublease or joint
> venture which has been accepted orally . . . or in writing.

*See* Debtors' Objection Exs. C, D, E, O, Q and AA.

The Former Agents are entitled to a commission for each transaction in which the buyer

or tenant was procured *before* the Petition Date.  However, these Transactions also gave rise to

commissions that were paid to the Debtors *after* the Petition Date.

The Former Agents argue that the commissions are not prepetition claims.  According to

the Former Agents, the contractual agreements between the parties indicated that the Former

Agents did not have a claim against the Debtors for commissions unless and until the Debtors

received payment from a third party.  Therefore, the Former Agents argue that they never

"earned" or had a right to payment of the commissions until payment was actually received by

Grubb & Ellis—all of which occurred after the Petition Date.

The Debtors and the Creditors Committee argue that the Former Agents' claims for

commissions are actually prepetition claims that would render them, at best, general unsecured

claims.  Debtors cite a plethora of relevant case law holding that, where a real estate broker

procures a buyer or tenant prepetition, the broker's claim for commissions relating to that

transaction is not entitled to administrative priority even when the right to payment arises

postpetition.  The Debtors also argue that even if the Former Agents could establish that their

claims are based on postpetition transactions, the motion must still be denied because they fail to

establish that they afforded any benefit to the Debtors' estate or that the Debtors induced them to

act to provide benefits to the estate.

## II.    DISCUSSION

According to the Bankruptcy Code, a claim is a "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5).

Section 503(b)(1)(A) of the Bankruptcy Code defines administrative expenses and

provides in pertinent part that:

> After notice and a hearing, there shall be allowed, administrative
> expenses, other than claims allowed under section 502(f) of this
> title, including – (1)(A) the actual, necessary costs and expenses of
> preserving the estate, including – (i) wages, salaries, and
> commissions for services rendered after the commencement of the
> case.

11 U.S.C. § 503(b)(1)(A)(i).

Courts in the Second Circuit use a two-part test to determine whether a specific claim

qualifies as an administrative expense under section 503(b)(1)(A): first, there must be a

postpetition transaction, making it a transaction between the debtor-in-possession and the

creditor; and second, the estate must receive a benefit from the transaction.  *See Trustees of the*

*Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

"Accordingly, an expense is administrative only if it arises out of a transaction between

the creditor and the bankrupt's trustee or debtor in possession . . . .  A debtor is not entitled to

priority simply because the right to payment arises after the debtor in possession has begun

managing the estate."  *Id.* (citations omitted).  Moreover, "the services performed by the claimant

must have been 'induced' by the debtor-in-possession, not the pre-petition debtor." *In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002). A "benefit to the debtor-in-possession alone is not sufficient to warrant entitlement to an administrative claim priority as it would be contrary to this policy reason for allowing the priority." *Id.* (citing *Matter of Jartran, Inc.*, 732 F.2d 584, 590 (7th Cir. 1984)). In other words, to qualify for administrative priority, a debtor's obligation to make a payment must have arisen out of a *postpetition* transaction between the creditor and the debtor. *In re BH S&B Holdings LLC*, 426 B.R. 478, 486-87 (Bankr. S.D.N.Y. 2010).

When determining whether a broker's claim for a commission from a seller should be accorded administrative priority, bankruptcy courts focus on when the transaction or consideration giving rise to the claim occurred or was performed, and not the timing of the debtor's receipt of payment. "If the consideration was supplied pre-petition, the claim is not entitled to administrative priority even where the right to payment arises post-petition." *In re WorldCom, Inc.*, 308 B.R. 157, 166 (Bankr. S.D.N.Y. 2004) (citing *Jartran*); *see also In re Baths Int'l, Inc.*, 25 B.R. 538, 540 (Bankr. S.D.N.Y. 1982) ("It is equally clear that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing"), *aff'd*, 31 B.R. 143 (S.D.N.Y. 1983).

Courts have viewed a real estate broker's obligation as having been performed when the parties to a deal are brought together, not when the broker receives or has a right to receive payment. *See Coldwell Banker & Co. v. Godwin Bevers Co, Inc. (In re Godwin Bevers Co., Inc.)*, 575 F.2d 805, 807-08 (10th Cir. 1978); *In re Hackney*, 351 B.R. 179, 191 (Bankr. N.D. Ala. 2006) (citing *In re HSD Venture*, 178 B.R. 831, 836 (Bankr. S.D. Cal. 1995) (concluding that commissions due from seller to real estate brokers for prepetition efforts which resulted in

postpetition contracts for sales of debtor-in-possession's condominium units being obtained

would not be allowed as administrative expenses pursuant to 503(b)(3)(D))).  *See also In re J.M.*

*Fields, Inc.*, 22 B.R. 861, 865 (Bankr. S.D.N.Y. 1982) (holding that even though commissions

did not become payable until after the petition was filed, the commissions were a general

unsecured claim because they were earned prepetition when a buyer was procured); *In re*

*Moskovic*, 77 B.R. 421, 423 (Bankr. S.D.N.Y. 1987) (denying administrative priority to a

broker's claim where the broker obtained a purchaser for the debtor's real estate and executed

the sale contract prepetition but the sale closed postpetition, holding that the broker earned his

commission when he obtained the buyer prepetition); *In re Precision Carwash Corp.*, 90 B.R.

34, 38 (Bankr. E.D.N.Y. 1988).

        In this case, the buyers for the Transactions were all procured before the Petition Date.

Indeed, many of these Transactions either closed or were on their way to closing before the

Petition Date.  The Former Agents' arguments cannot withstand the clearly-established case law

that holds that commissions received postpetition for deals that were procured prepetition simply

cannot be classified as administrative expense claims.

        The Former Agents cite to cases holding that, at least in the nonbankruptcy context, no

claim for a portion of a shared commission lies until the primary broker receives payment.  *See,*

*e.g., William T. Bell & Assocs., LLP v. Pyramid Brokerage Co., Inc.*, 721 N.Y.S.2d 893, 894

(N.Y. App. Div. 2001); *Sven Salen AB v. Jacq. Pierot, Jr. & Sons, Inc.*, 559 F. Supp. 503, 506

(S.D.N.Y. 1983).[1]  In arguing that this case law applies here, the Former Agents also attempt to

---

[1]        In their Motion, the Former Agents also compare the payment of commissions shared between brokers to
severance payments.  If the severance payments are earned at the time of the employee's dismissal (which they
generally are), then they are entitled to administrative expense priority.  *See Supplee v. Bethlehem Steel Corp.*, No.
04-CV-2413 (GBD), 2006 U.S. Dist. LEXIS 8029, at *8 (S.D.N.Y. Mar. 2, 2006).  The Former Agents argue that,
similarly, the commissions were only "earned" when the Debtors received the commissions.  The Court finds this
analogy untenable.

distinguish away unfavorable cases by arguing that those cases, unlike the case now before the

Court, involved brokers trying to collect postpetition commissions from *sellers* (not agents of the

broker seeking to collect from the broker).  The Court agrees with Debtors that this is a

distinction without a difference.  Moreover, no legal authority suggests that the agent of a broker

should be treated any differently than the broker itself with respect to whether commissions paid

out postpetition, when consideration for the deal accrued prepetition, should give rise to

administrative expense claims.

The Former Agents also cite *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest*

*Prods. Corp.)*, 209 F.3d 125 (2d Cir. 2000), for the proposition that the right to payment is the

critical element in determining whether a claim exists.  *See id*. at 129 (stating that a claim will be

deemed prepetition if "the relationship between the debtor and creditor contained all the

elements necessary to give rise to a legal obligation—'a right to payment' under the relevant

non-bankruptcy law").  However, the issue in *Manville* concerned whether certain

indemnification rights met the definition of "claims" and arose prepetition for purposes of their

discharge by the bankruptcy confirmation, not whether these claims qualified for administrative

priority.  *Id*. at 128-29.  In addition, as Debtors point out, the court acknowledged that "[t]he fact

that the contingency in this case . . . materialized post-petition *does not transmogrify the claim*

*into a post-petition claim*."  *Id*. at 130 (citing *In re Chateaugay Corp*., 102 B.R. 335, 352 (Bankr.

S.D.N.Y. 1989) (emphasis added)).  The Former Agents' reliance on *Manville* is misplaced.

Lastly, the Former Agents cite this Court's *Memorandum Opinion Approving the Sale of*

*Substantially All of the Debtor's Assets* (the "Sale Opinion") (ECF Doc. #829), stating that "[t]he

Debtors' contracts with their agents create the rights to payment of commissions to the agents,

which may be general unsecured claims, priority claims, or administrative claims, depending on

when the commissions are earned by the agents." Sale Opinion at 15. In addition to the fact that

the Court was not deciding the issue it now faces, the Former Agents misconstrue this statement

to mean that the Court has already ruled that the commissions, which are the subject of this

dispute, must be considered administrative expense claims because the operative date is "when

the commissions are earned by the agents." The Former Agents incorrectly assume this Court

used the word "earned" to mean when commissions are actually paid out. The Court

acknowledged that the claims arising out of commission payments "*may be general unsecured*

*claims* . . . or administrative claims." The Court said nothing about whether the phrase

"commissions earned by the agents" indicated that a commission was "earned" when a right to

payment arises, or when the consideration for the transaction accrues. The Former Agents take

the Sale Opinion too far out of context.

### III.    CONCLUSION

For all the reasons stated above, the Former Agents' Motion is **DENIED**.

**IT IS SO ORDERED.**


Dated: October 2, 2012
        New York, New York


                                    _____*Martin Glenn*_____
                                        MARTIN GLENN
                                United States Bankruptcy Judge